BENZIGER et al. v. UNITED STATES.

(Circuit Court, S. D. New York. December 22, 1900.)

CUSTOMS DUTIES—RELIGIOUS FIGURES.

Certain figures five feet six inches in height, representing religious subjects, and scenes in the life of the Saviour, composed of pulverized stone, cement, plaster of Paris, and other materials, and colored and otherwise decorated, were properly assessed for duty under Act July 24, 1897, pars. 97, 450, at 45 per cent. and 35 per cent. ad valorem, as manufactures of plaster of Paris not specially provided for, or as articles and wares composed wholly or in chief value of earthy or mineral substances not specially provided for; and were not exempt from duty, under paragraph 649 of said act, as casts of sculpture imported in good faith for the use of a society incorporated for religious purposes.

107 F.—17

Appeal by the Importers from a Decision of the Board of United States General Appraisers.

W. Wickham Smith, for importers.

Chas. D. Baker, Asst. U. S. Atty.

TOWNSEND, District Judge. On March 25, 1899, Benziger Bros. imported into the port of New York certain figures in the round five feet six inches in height, representing the Saviour, St. Anthony of Padua, and other religious subjects, and certain bas reliefs representing scenes in the life of the Saviour and known as "Stations of the Cross." These objects are composed of pulverized stone, cement, plaster of Paris, terra cotta, and other materials, and are colored and otherwise decorated. They were assessed for duty at 35 per cent. and 45 per cent. ad valorem, under the provisions of paragraphs 450 and 97 of the act of July 24, 1897, as "manufactures of plaster of Paris not specially provided for," or as "articles and wares composed wholly or in chief value of earthy or mineral substances not specially provided for." The importers protested, claiming that the merchandise was exempt from duty as "casts of sculpture imported in good faith for the use of a society incorporated for religious purposes," under paragraph 649 of said act. These objects are produced in the following manner, as stated by the board:

"The clay model of the subject, of desired size, is covered by a workman with a coating some two inches thick of plaster of Paris. When this coating has 'set' or hardened sufficiently, the clay figure inside is broken up and removed, and a plaster of Paris mold thereof is thus obtained. Plaster is then carefully forced into this mold, and when dry is taken out in the form of the original clay figure. This plaster figure, after having been carefully gone over by an artist or skilled workman to cure any defects in the molding, is in turn thoroughly covered with specially prepared plaster for the final mold. This is made in sections, which, when dry, are removed, and together form a perfect mold, and this composite mold becomes the manufacturer's substitute for the artist's clay or plaster cast model, from which he (the manufacturer) produces his molded statues in unlimited numbers. In the molding process the several sections of the mold are in turn laid with the concave side upward, and having a lining of 'carton pierre,' one-half inch or more in thickness, carefully laid and pressed into them by the molder's hands with the aid of suitable tools. The extended arms, fingers, and other slender parts are strengthened by pieces of iron wire laid in the 'carton pierre,' which is then lined either with heavy paper or coarse-woven vegetable fiber cloth secured with glue. After the 'carton pierre' has dried sufficiently, the several sections of the mold are removed, and their contents joined together around a framework of wood, and a figure is thus formed, the counterpart of the original model. The statue then goes to a skilled workman, called a 'finisher,' who, with knife or other instrument, removes any roughness resulting from the joining of the sections, cures any other defects in the molding, and smoothes it down generally. It is then passed to the painter and decorator, who completes it in the style desired."

The evidence as to whether these figures, as originally molded or cast, were or were not casts of sculpture, is conflicting. In their present condition they are not so known commercially, or to the profession of sculptors generally. In the technical or professional sense, a cast of sculpture is one taken from an original creation in clay as part of the process of making the completed statue in bronze or marble. In a broader sense, the term embraces casts from sculp-

tured objects in marble or bronze, which reproduce the original objects. These objects have been cast or molded, as above explained, from a sculptured object, using the term "sculptured" in its broadest sense. The provisions of paragraph 649 of said act of July 24, 1897, are as follows:

"649. Regalia and gems, statuary, and specimens or casts of sculpture, where specially imported in good faith for the use and by order of any society incorporated or established solely for religious, philosophical, educational, scientific or literary purposes, or for the encouragement of the fine arts, or for the use and by order of any college, academy, school, or seminary of learning in the United States, or any state or public library, and not for sale."

It seems as though congress must have intended by the term "casts of sculpture" such copies of artistic statuary or other sculpture cast in materials such as plaster of Paris as are adapted, for example, for educational institutions, whether intended to be thereafter used as a part of the process of making the statue or not. It cannot have been the intention of congress, however, by said provision to permit our churches, colleges, and historical societies to import free of duty their whole interior decorations in the plastic art under the guise of casts of sculpture.

Counsel for the importers contends that, inasmuch as these articles are cast, and are copies of sculptured objects, they are, in fact, casts of sculpture, and that, as no trade designation is involved, the testimony of professional sculptors is inadmissible to show the meaning of said term. But in this case the peculiar phraseology of the statute requires that the court should inquire as to the classes of articles included under the broad term "casts of sculpture," in order to determine which would be appropriate for such importa-
religious or literary societies. In its broadest sense "casts
" might be so perverted as to embrace, for example, an
ll. It is not necessary, however, in the disposition
to determine whether such objects, if imported in their
ate, would be free of duty under said paragraph. They have
advanced by the skill of the artist from a mere manufacture
from composition to a completed decorative object. Not only have the figures themselves been elaborately painted and gilded, but in two of the exhibits original paintings have been made, showing sky and clouds, temples, arches, and other decorations entirely independent of the figure itself. To one of the exhibits there has also been added a piece of twine simulating the rope used by soldiers in their infliction of tortures upon the Saviour. The faces have been so painted as to suggest the sentiments of the actors, and paint simulating drops of blood has been applied to the forehead of the figure of the Saviour. Such objects are not "casts of sculpture." The decision of the board of general appraisers is affirmed.